UNITED STATES of America,
Plaintiff–Appellee,

v.

**Doyce Elliott HUNT, Defendant–Appellant.**

No. 02–6010.

United States Court of Appeals,
Sixth Circuit.

Jan. 6, 2004.

58

Thomas A. Colthurst, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

April R. Goode, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

**OPINION**

MOORE, Circuit Judge.

Doyce Elliott Hunt, Jr. ("Hunt") appeals his sentence of 240 months of imprisonment upon a guilty plea to conspiracy to manufacture methamphetamine. He challenges the district court's refusal to grant a downward adjustment for acceptance of responsibility, and its imposition of an enhancement for endangering the life of a minor. Because the district court did not commit error on either count, we **AFFIRM** the judgment of the district court.

**I.**

In September 2001, Hunt initiated contact with Edgar Weldon, III ("Weldon"), a friend of Hunt's late brother, and proposed a conspiracy to manufacture and distribute methamphetamine. According to the agreement, Hunt would supply most of the ingredients, Weldon would make the methamphetamine, and the two would split the product fifty-fifty. Three other conspirators charged in the federal indictment and Hunt's son Brad were also involved. All throughout the course of the conspiracy, which lasted about four months, from September 2001 through January 2002, each of the conspirators was heavily using methamphetamine, and many were using marijuana and cocaine. Brad was also using drugs in the presence of his father. The lithium-ammonia method of manufacture of methamphetamine employed by the conspiracy uses a number of dangerous ingredients: ether is highly flammable; lithium metal is highly reactive, resulting in fire or explosion when exposed to water; anhydrous ammonia has toxic fumes; and anhydrous ammonia can also burn the skin.

Hunt's coconspirators testified to his leadership role in the offense, for which he

received a sentencing enhancement, describing his giving them money to get supplies and insisting on receipts. Hunt provided various locations for the manufacture of methamphetamine (the "cooks"), and at the time of arrest, each of the coconspirators was living in Hunt's house. Hunt also involved himself in the procurement of anhydrous ammonia, which was usually stolen. Brad, apparently with his father's approval and under his direction, also participated in the theft of anhydrous ammonia.

On January 14, 2002, Weldon began a cook at Hunt's residence. Weldon put anhydrous ammonia in a container in a back shed and then brought the ammonia up to the back porch, where exposed and reactive lithium strips were added. Because the night was humid and threatened to rain, the cook was moved inside when ether was added. Hunt was aware of the cook and directed at first that it be conducted outside, but once the rain began, Hunt gave permission for the cook to be moved inside the house, where Brad was present. The next day, investigating officers responding to a tip conducted a "knock and talk" at Hunt's home, received permission to search the residence, and discovered methamphetamine and ingredients used in its manufacture. The police then called in the Drug Enforcement Task Force and obtained a search warrant for the premises. They discovered a total of 26 grams of methamphetamine and a number of other drugs, and various stores in and around the residence of chemicals known to be dangerous, including lithium batteries and exposed lithium strips, two fire extinguishers containing anhydrous ammonia, and empty starter fluid cans, as well as the remains of a cook.

On February 5, 2002, an indictment was returned charging Hunt and his coconspirators with four counts related to the manufacture and distribution of methamphetamine. Hunt entered a guilty plea to Count 1, conspiracy to manufacture methamphetamine, on April 29, 2002; in return, the government agreed to recommend that he "receive credit for acceptance of responsibility under U.S.S.G. § 3E1.1," among other considerations. Joint Appendix ("J.A.") at 16. At sentencing on July 31, 2002, Hunt's base offense level was assessed at 28, with a two-level increase for a firearms enhancement under U.S.S.G. § 2D1.1.(b)(1), a four-level increase for a leadership role in the offense under U.S.S.G. § 3B1.1(a), a two-level increase for the use of minor under U.S.S.G. § 3B1.4, and a six-level increase for creating substantial risk of harm to the life of a minor under U.S.S.G. § 2D1.1(b)(5)(C). Only this last increase is challenged on appeal. Hunt's final offense level was 42, and his criminal history category was assessed at II, indicating an appropriate guidelines range of 360 months to life imprisonment; he was sentenced to 240 months, the statutory maximum.

## II.

Hunt challenges two aspects of his sentencing: the district court's refusal to grant a downward adjustment for acceptance of responsibility and its application of an enhancement for a substantial risk of harm to a minor. "We review de novo the sentencing court's interpretation of the Sentencing Guidelines and statutes, and we review for clear error its factual findings. If the district court's factual findings are not clearly erroneous, this court reviews de novo the determination that the conduct in question constituted relevant conduct." *United States v. Corrado*, 304 F.3d 593, 607 (6th Cir.2002) (citations and internal quotation marks omitted).

■ Under U.S.S.G. § 3E1.1(a),[1] a district court can decrease a defendant's offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." Application Note 1(a) explains that while "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction," a defendant may not "falsely den[y], or frivolously contest[ ], relevant conduct that the court determines to be true." In declining to credit Hunt under § 3E1.1(a), the district court stated that "what the Court has heard here today doesn't amount to acceptance of responsibility in the Court's opinion.... Mr. Hunt is effectively in denial as to what the—the evidence the Court has heard about his role in the offense." J.A. at 158. Hunt complains that the district court went beyond the Guidelines in requiring that he admit to all relevant conduct, but Hunt in fact falsely denied and frivolously contested relevant conduct. He made self-serving statements to the court below denying his leadership role in the offense, his allowance of the methamphetamine cook to take place in his home, and his use of his son in the conspiracy. The defendant has the burden of proving the appropriateness of a decrease for acceptance of responsibility, *see United States v. Lawson*, 266 F.3d 462, 466 (6th Cir.2001), and the district court did not err in finding that Hunt did not meet his burden.

■ The district court also assessed a six-level increase under U.S.S.G. § 2D1.1(b)(5)(C), which calls for such an increase if the offense involved the manufacture of methamphetamine and "created a substantial risk or harm to the life of a minor." Hunt challenges this increase, arguing that in the one instance when the government demonstrated that a cook took place in Hunt's residence while Brad was

home, the dangerous part of the cook was conducted before the cook was moved into the home. For guidance on this point, we look to *United States v. Layne*, 324 F.3d 464, 468–471 (6th Cir.2003), published after the district court decision below. *Layne* affirms an enhancement under former § 2D1.1(b)(6)(A), substantially similar to current § 2D1.1(b)(5)(B), involving risk to human life more generally. The first three mandatory factors outlined in current U.S.S.G. § 2D1.1 Application Note 20 (formerly Note 21) have similar weight in this case as they did in *Layne*, with the exception that here, the conspiracy was of a longer duration, and therefore the third factor militates more strongly in favor of enhancement. The fourth factor in *Layne*, the location of the laboratory and the number of human lives placed at substantial risk of harm, is here replaced by the proximity of the minor to the dangers associated with the manufacture. Hunt argues that the January 14 cook presented minimal risk to Brad because it was almost complete by the time the cook was moved into the house. This argument is unpersuasive for two reasons: first, the portion of the cook using the highly explosive lithium strips was conducted on the porch of the house, which still presents a serious risk to those inside the house; second, the part of the cook that was conducted inside the house used quantities of highly flammable ether. Given these facts, the district court did not commit error in applying the enhancement.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

1. The 2001 Guidelines were used at sentencing.